IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**CRAYTONIA BADGER,**
**ADC #162710**                                                                                       **PLAINTIFF**

V.                              CASE NO. 4:16-CV-621-KGB-BD

**WENDY KELLEY,** *et al.*                                                                **DEFENDANTS**

### RECOMMENDED DISPOSITION

**I.      Procedures for Filing Objections:**

This Recommended Disposition (Recommendation) has been sent to Judge Kristine G. Baker. Any party to this suit may file written objections with the Clerk of Court. To be considered, objections must be filed within 14 days. Objections should be specific and should include the factual or legal basis for the objection.

If parties do not file objections, they risk waiving the right to appeal questions of fact. And, if no objections are filed, Judge Baker can adopt this Recommendation without independently reviewing the record.

**II.     Background:**

Plaintiff Craytonia Badger, an Arkansas Department of Correction (ADC) inmate, filed this case without the help of a lawyer under 42 U.S.C. § 1983. (Docket entry #2) Mr. Badger alleges that he was injured while working on the hoe squad and claims that his injury was a result of the deliberate indifference to his safety by Defendants Foote, Cashion, and Batson. He also claims that Defendants Foote, Cashion, Batson, and Brooks provided him inadequate medical care for the injuries he sustained in the incident.

Finally, he claims that Defendant Cashion had him transferred to a different unit in retaliation for his filing grievances about the incident.[1] (#2)

Defendants Foote, Cashion, and Batson (ADC Defendants) and Defendant Brooks (Medical Defendant) all moved for summary judgment. (#99, #100) Mr. Badger responded. (#107, #116)

### III. Standard:

Summary judgment means that the court rules in favor of a party without the need for a trial. A moving party is entitled to summary judgment if the evidence, viewed in the light most favorable to the party on the other side of the lawsuit, shows that there is no genuine dispute as to any fact that is important to the outcome of the case. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 (1986).

### IV. Facts:

On the morning of March 7, 2016, 52 inmates at the Wrightsville Unit, including Mr. Badger, were transported to their worksite by a tractor pulling a tool trailer and two wagons. (#105, pp. 17-20) The inmates were riding in wagons behind the tool trailer. (#105, pp. 20-22) As the tractor traveled up the side of a levee, it began to slide. (#105, pp. 25-27) The inmates were ordered to get out of the wagons and walk over the levee while inmate Clements drove the tractor over the levee.[2] (#105, p. 27) After the tractor

---

[1] All other claims and Defendants have been dismissed. (#8, #47, #63)

[2] It was common practice for the inmates to be removed from the wagons before traveling up the levee. (#99-6, p. 2)

made it over the levee, the inmates got back onto the wagons and rode to the worksite. (#105, p. 27)

At around 10:55 a.m., the inmates got onto the wagons to return to their unit for lunch. (#105, pp. 27-28) Sergeant Laminack (no longer a named Defendant) instructed inmate Clements to keep driving over the levee with the inmates on the wagons rather than stopping for the inmates walk. (#105, p. 29) As the tractor ascended the levee, its wheels began to spin; it rolled down the embankment; and the tool trailer flipped. (#105, pp. 29-30) As the tool trailer flipped, Mr. Badger and the other inmates were thrown from the wagon. (#105, pp. 30) According to Mr. Badger, he sustained injuries to his thumb, head, neck, hip, and back in the accident. (#2, p. 8; #105, pp. 31-32) He testified that his left thumb had swelling and a small cut, but it was not bleeding. (#105, pp. 36-37, 39)

After the accident, Sergeant Laminack called his supervisor, Defendant Batson, who, in turn, called his supervisor, Defendant Foote, to the scene. In their declarations, both Defendant Batson and Defendant Foote affirmed that none of the inmates appeared to have serious injuries. (#99-4, #99-6) Defendant Foote photographed inmates' injuries, including Mr. Badger's. (#99-6; #99-2, #105, p. 36) Warden Cashion was also notified about the accident, and he, too, went to the levee. In his declaration, he stated that he did not talk to any of the inmates but did not seeing any serious injuries. (#99-7; #105, pp. 39-40)

Infirmary staff members were notified of the accident and, pursuant to ADC policy, waited for injured inmates to arrive at the infirmary for treatment. ADC policy

prohibits infirmary staff from attending an accident scene if inmates sustain only minor injuries. (#99-4, p. 2)

The inmates stood at the scene of the accident in two lines for almost two hours while the tractor was repaired. Once repairs were complete, the wagons were again hooked to the trailer, and the inmates rode back to the unit on the wagons. (#99-6; #105, pp. 36, 38-39) Once back at the unit, the inmates wrote witness statements, and injured inmates were taken to the infirmary. (#105, pp. 40-41)

Mr. Badger testified that, by the time he reached the infirmary, he could barely move his thumb. (#105, p. 48) At the infirmary, he was examined by Defendant Brooks, a licensed nurse. (#2, p. 9; #102-1, p. 1) Mr. Badger told Defendant Brooks that he had injured his thumb, back, head, neck, and hip in the accident. (#105, pp. 48-51, 55) He concedes that he already had problems with his hip due to a previous injury. (#105, pp. 48-51, 55)

According to Defendant Brooks's notes, Mr. Badger had a one-centimeter cut on his left thumb when she examined him. By the time she examined Mr. Badger, his thumb was not bleeding. (#102-1, pp. 1-2) She noted no bruising or abrasion on Mr. Badger's back or hip. A knot on Mr. Badger's head had been identified two months earlier as a lipoma. (#102-1, pp. 1-2) Defendant Brooks cleaned and bandaged Mr. Badger's thumb and gave him a five-day script for Tylenol for his hip pain. (#102-1, pp. 1-2)

Mr. Badger was not given a lay-in[3] and was told that he could return to work. (#105, p. 42) The next day, therefore, Defendant Batson required Mr. Badger to report to work. (#105, p. 43) According to Mr. Badger, working the next day aggravated his thumb and back injuries. (#105, pp. 43-44)

The following day Mr. Badger was examined by nurse Hopson (not a named Defendant) for hip pain and allergies. (#102-1, p. 2) Nurse Hopson noted no unsteady gait. (#102-1, p. 2) Mr. Badger requested and received ice. (#102-1, p. 2) Nurse Hopson also prescribed an antihistamine for Mr. Badger's allergy complaints. (#102-1, p. 2)

According to Defendant Cashion, Director Kelley (no longer a Defendant) had directed him to transfer Mr. Badger to the Ouachita River Unit (ORU) before the March 7, 2016 accident due to Mr. Badger's history of "messing with [the] staff." (#99-7, p. 2) On March 8, 2018, ADC staff member Itena Jackson (not a Defendant) filled out a transfer request, asking that Mr. Badger be transferred to the ORU. (#99-8) On March 9, 2016, Mr. Badger filed three grievances related to the March 7, 2016 accident. (#99-9, pp. 4-5) He was transferred to the ORU on the day he filed the grievances. (#99-7)

On March 14, 2016, Mr. Badger was examined by the sick-call nurse for complaints of a swollen, painful thumb. He also complained of sharp pain in the lower left side of his back, neck, and right hip. (#102-1, p. 4) The nurse noted that Mr. Badger had a steady gait, normal posture, and sat with ease. There was no edema, no deformity, and no discoloration in Mr. Badger's back, neck and hip; his range-of-motion was

---

[3] The infirmary staff issue a so-called "lay-in" to excuse inmates from work if the inmates are unable to work due to illness or injury. (#99-4, p. 3)

normal; and he was able to bear weight with no limp. (#102-1, p. 4) The nurse issued a two-day script for no duty and ordered that Mr. Badger not participate in sports activities or yard call. The nurse further suggested that Mr. Badger elevate his leg, take warm showers, and return for additional care as needed. (#102-1, p. 4)

On March 21, 2016, Mr. Badger returned to sick-call complaining of back pain, neck pain, and a swollen thumb. (#102-1, p. 5) The nurse noted no distress, steady gait, normal posture when sitting, standing with ease, no edema, no discoloration, no deformity. (#102-1, p. 5) The nurse issued a two-day script for no duty, no sports, and no yard call. The nurse referred him to a physician at that visit. (#102-1, p. 5)

On March 23, 2016, Mr. Badger saw Dr. Liggett (not a Defendant), who noted that Mr. Badger was in no apparent distress and had a normal gait. His back was symmetrical, but there was a subjective complaint of tenderness left of L5. His straight-leg raises were negative for pain, and his lower extremities had normal reflexes. (#102-1, p. 6)

Dr. Liggett noted a small, tender, swollen area of Mr. Badger's flexor tendon and interphalangeal joint of the left thumb. (#102-1, p. 6) He diagnosed a finger sprain and lower back sprain. (#102-1, p. 6) He prescribed ibuprofen and a non-steroidal anti-inflammatory drug for eight days. (#102-1, p. 6)

On April 4, 2016, Mr. Badger refused all medical treatment and reported that he was no longer in pain. (#102-1, p. 8) On April 8, 2016, however, his thumb was x-rayed because it was still swollen. (#2, p.9) The results showed no break in his thumb. (#2, p.9)

On August 29, 2016, Mr. Badger filed this lawsuit claiming that: ADC Defendants were deliberately indifferent to his safety; ADC and Medical Defendants were

deliberately indifferent to his medical needs; and Defendant Cashion arranged to have him transferred in retaliation for filing grievances after the accident. (#2)

V.   **Discussion:**

    A.   Deliberate Indifference to Safety

The Eighth Amendment's prohibition against cruel and unusual punishment includes the right to safe and humane conditions of confinement. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994). To prevail on a deliberate-indifference claim, a prisoner must show that the prison official knew that the prisoner faced a substantial risk of serious harm but chose to disregard that risk. *Id*. at 837; *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011). "Deliberate indifference" in this context, "describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. But, a prisoner is not required to show that the official acted "for the very purpose of causing harm or with knowledge that harm [would] result." *Farmer*, 511 U.S. at 835. In other words, "acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding [a known] risk." *Id*. at 836.

Here, Mr. Badger alleges that Defendants Foote, Cashion, and Batson all knew before the accident that the tractor had faulty brakes, yet ordered the inmates to be transported on wagons pulled by the defective tractor. (#2, p. 7; #105, pp. 31-32)

        1.   Defendant Foote

Mr. Badger asserts that on the morning of March 7, 2016, he heard Defendant Foote tell inmate Clement not to drive too fast because the tractor only had one left brake. (#2, p. 7; #105, pp. 23-24) Defendant Foote, however, testified that he had no knowledge

7

that the brakes were not working properly on March 7, 2016, and further, that he did not tell inmate Clement to drive slowly because the tractor had only one left brake. (#99-6) In his declaration, Defendant Foote explained that he did not interact with the inmates when they arrived for work, so he would never have spoken to inmate Clement before they left the unit that morning. (#99-6) Routine service checks of the tractor were conducted on February 16, 2016, and March 21, 2016, and the checks did not indicate that anything was wrong with the tractor. (#99-5)

      Assuming Mr. Badger's version of the facts are true, however, for purposes of assessing the merits of Defendants' motion for summary judgment—that is, assuming Defendant Foote knew that the tractor had faulty brakes—that conduct falls short of the deliberate-indifference standard. It is undisputed that inmates, by custom and practice, got off the wagons before the wagons traversed the levee. (#99-6) Mr. Badger has not come forward with any evidence indicating that Defendant Foote knew that Sergeant Laminack would try to cross the levee with inmates on the wagons, contrary to standard practice.

      In fact, according to Mr. Badger's complaint, Sergeant Laminack told inmate Clement to keep driving over the levee with inmates on the wagons and that inmate Clement told Sergeant Laminack: "Major Foote has rules pertaining to this very hill. That he don't want no inmates aboard while going over the hill because it was to [sic] risky and beside the tractor only have one left brake." (#2, p. 7)

      Even if Defendant Foote knew that the tractor had faulty brakes, his decision to allow inmates to ride on wagons pulled by that tractor would be negligent, or at most

8

grossly negligent; it would not amount to deliberate indifference. There is no evidence to indicate that Defendant Foote acted with a state of mind akin to criminal recklessness.

    2.  Defendants Cashion and Batson

According to Mr. Badger, Defendant Cashion knew that the tractor had one faulty brake because he is the warden and "everything has to go through him." Defendant Batson knew about the faulty brake, he alleges, because he was a field supervisor and supervisor of the Inmate Car Care (ICC) garage.[4] (#105, pp. 31-32) Both Defendants Cashion and Batson testified that, prior to the accident, they had no knowledge that the brakes on the tractor were not working properly and that, to the best of their knowledge, the brakes *were* working properly that day. (#99-4; #99-7)

For purposes of reviewing the motion for summary judgment, the Court will assume that the brakes were faulty; that Defendants Cashion and Batson knew they were faulty; and that faulty brakes caused the accident. Even so, their knowledge that the left brake needed repair does not evidence the degree of culpability required to deem conduct deliberately indifferent.

  B.  Deliberate Indifference to Medical Needs

Determining whether an official was deliberately indifferent to an inmate's medical needs involves both an objective and a subjective inquiry. *Scott v. Benson*, 742 F.3d 335, 339–40 (8th Cir. 2014). To prevail, Mr. Badger must show that he suffered

---

[4] The ICC garage is responsible for performing weekly service checks on all farm equipment at the unit. (#99-4) There is no evidence that the ICC checks ever indicated a brake was faulty. (#99-4; #99-5)

from an objectively serious medical need and that the Defendants "actually knew of but deliberately disregarded [his] serious medical need." *Id*. at 340. "A medical need is objectively serious if it either has been 'diagnosed by a physician as requiring treatment' or is 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Id*. at 340 (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)).

As discussed, deliberate indifference requires a showing that defendants had a mental state "akin to criminal recklessness." *Scott*, 742 F.3d at 340 (quoting *Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006)); see also *Fourte v. Faulkner County, Ark.*, 746 F.3d 384, 387 (8th Cir. 2014) (quoting *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)).

1. Defendants Foote, Cashion, and Batson

Mr. Badger alleges that the ADC Defendants were deliberately indifferent to his medical needs by forcing him to stand in line for almost two hours without offering him medical treatment. (#105, pp. 44-45) But, prison officials are not required to handle medical complaints as quickly as inmates might wish. *Jenkins v. Country of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009). Because Mr. Badger's deliberate-indifference claims are based on a delay in receiving treatment, the objective seriousness of his need for medical treatment must be measured "by reference to the effect of delay in treatment." *Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016); *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997). An inmate who complains about a delay in receiving medical treatment must place verifying medical evidence in the record to establish the detrimental effect of the delay. *Id*.

10

Mr. Badger has failed to come forward with any evidence to show that he suffered any harm from the two-hour wait between the time of his injury and his examination by infirmary staff. In fact, there is nothing in the record to suggest that the delay harmed Mr. Badger in any way.

2. Defendant Brooks

Mr. Badger alleges that, when he got to the infirmary after the accident, Defendant Brooks should have "tended to his injuries." (#105, pp. 55-58) He asserts that Defendant Brooks should have ordered an x-ray his thumb because it was swollen; she should have done "something in regard to [his] back"; and she should have tended to his hip, although he is not sure how. (#105, pp. 55-58) Mr. Badger now argues that Defendant Brooks should have referred him to a doctor for his back and neck injuries. (#109, p. 8)

Defendant Brooks has attached the affidavit of Dr. Melanie Jones, a licensed physician and medical director at the Wrightsville and Hawkins Units of the ADC, to her motion for summary judgment. (#102-3) According to Dr. Jones, the medical care Defendant Brooks offered Mr. Badger was appropriate, and Mr. Badger's condition on the day he saw Defendant Brooks did not require x-rays or other diagnostic testing, a lay-in, or a referral to an outside provider. (#102-3, p. 3) In Dr. Jones's opinion, Defendant Brooks "followed the appropriate clinical pathway with regard to her evaluation of Mr. Badger, including her offer of Tylenol for pain." (#102-3, p. 3) While Mr. Badger might have preferred an immediate thumb x-ray, a referral to a doctor, and other unspecified treatment, his preferences are not relevant. A mere disagreement with medical treatment

11

decisions will not support a claim of a constitutional violation. *See Langford v. Norris*; 614 F.3d 445, 460 (8th Cir. 2010); *Dulany v. Carnahan*, 132 F.3d 1234, 1239-40 (8th Cir. 1997) (prisoner's disagreement with a prescribed course of treatment is insufficient to establish a deliberate-indifference claim.).

Furthermore, Mr. Badger's suspicion that he did not receive adequate medical treatment is directly contradicted by the medical records and physician affidavits indicating that he received appropriate care. *See Dulany*, 132 F.3d at 1240. Nothing in this record suggests that the treatment Defendant Brooks provided Mr. Badger was negligent, much less deliberately indifferent.

    C.    Retaliation by Defendant Cashion

Prison officials can transfer prisoners for almost any reason, but not if the transfer is retaliatory. *Saylor v. Nebraska*, 812 F.3d 637, 645 (8th Cir. 2016) (citing *Goff v. Burton*, 7 F.3d 734, 737 (8th Cir. 1993)). To prevail on a retaliation claim, Mr. Badger must show that retaliation was the "actual motivating factor" for his transfer and that the transfer would not have occurred "but for a retaliatory motive." *Haynes v. Stephenson*, 588 F.3d 1152, 1156 (8th Cir. 2009); *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007). "Merely alleging that an act was retaliatory is insufficient." *Meuir v. Greene Cty. Jail Employees*; 487 F.3d 1115, 1119 (8th Cir. 2007). Even at the summary judgment stage of a lawsuit, the prisoner faces a substantial burden in proving that retaliation was the actual motivating factor that led to his transfer. *Webb v. Hedrick*, 409 F.App'x. 33, *1 (8th Cir. 2010) (unpublished opinion) (*per curiam*); *Goff*, 7 F.3d 734, 737 (8th Cir. 1993); *see also Sisneros v. Nix*, 95 F.3d 749, 752 (8th Cir. 1996).

Here, Mr. Badger asserts that Defendant Cashion ordered him transferred from the Wrightsville Unit in retaliation for his filing of grievances about the tractor accident (#105, p. 46); but the evidence demonstrates that the transfer request was filed by Itena Jackson the day before Mr. Badger filed grievances about the accident. (#99-8; #99-9) Accordingly, Mr. Badger cannot show that "but for" filing his grievances, he would not have been transferred.

## VI. Conclusion:

The Court recommends that the ADC Defendants' motion for summary judgment (#99) be GRANTED, and that the Medical Defendant's motion for summary judgment (#100) also be GRANTED. Mr. Badger's claims against Defendants Foote, Cashion, Batson, and Brooks should be DISMISSED, with prejudice.

DATED this 3rd day of July, 2019.

_____
UNITED STATES MAGISTRATE JUDGE